```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
LANCE LOGAN, on behalf of himself and all        :
others similarly situated,                       :         **REPORT AND**
                                                 :         **RECOMMENDATION**
                           Plaintiff,            :
                                                 :         15-CV-248 (RRM)(PK)
               -against-                         :
                                                 :
WORLD LUXURY CARS, INC. d/b/a/ BOSS              :
AUTO PREMIER, NADIA LEV and ARIK LEV,            :
each in their individual and professional capacities, :
                                                 :
                           Defendants.           :
---------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Lance Logan brought this action against Defendants World Luxury Cars, Inc. ("World Luxury Cars"), Nadia Lev and Arik Lev (together, "Individual Defendants"), (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL") §§ 190 and 650 *et seq.* Plaintiff seeks, *inter alia*, unpaid minimum wages, overtime compensation, spread-of-hours premium, liquidated damages, interest, attorneys' fees, and costs. (*See* Compl., Dkt. 1.)

Before the Court on referral from the Honorable Roslynn R. Mauskopf is Plaintiff's Motion for Default Judgment (the "Motion"). (*See* Dkt. 14.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

## BACKGROUND

Defendant World Luxury Cars is a New York corporation that does business as a used car dealership under the name Boss Auto Premier ("Boss Auto"). (Compl. ¶¶ 9, 17.) Nadia Lev is an owner and CEO of Boss Auto and Arik Lev is an owner and supervisor at Boss Auto. (*Id.* ¶¶ 10-11.) From September 2009 to September 2014, Defendants employed Plaintiff as a maintenance worker and "general errand runner." (*Id.* ¶¶ 2, 21.) Plaintiff alleged that he was responsible for

1

cleaning vehicles and the auto shop and performing maintenance and repair duties on the shop building. (*Id.* ¶ 22.) He was also required to complete various errands for the Individual Defendant employers, including acting as a driver at their instruction and cleaning their personal residence. (*Id.* ¶¶ 23-27.)

Throughout the course of his employment, Plaintiff alleges that he worked six days a week for twelve hours each day, from 9:00 a.m. to 9:00 p.m. without any breaks. (*Id.* ¶ 30.) From September 2009 to April 2014, Defendants paid Plaintiff $300.00 per week in cash, and from May 2014 to September 2014, Defendants paid Plaintiff $400.00 per week in cash. (*Id.* ¶¶ 31-32.) These payments were meant to cover only the first forty hours worked per week. (*Id.* ¶¶ 31-32.) Plaintiff did not receive overtime compensation for working over forty hours per week or spread-of-hours pay for working over ten hours per day. (*Id.* ¶¶ 33, 37.) Defendants "did not record and did not permit Plaintiff to record all of his hours worked," and did not provide him with any wage notice or statement. (*Id.* ¶¶ 35-38.)

Plaintiff filed the Complaint on January 16, 2015, individually and on behalf of others similarly situated, alleging violations of the FLSA and NYLL. Defendants Nadia and Arik Lev, who are married to each other, were served with the Summons and Complaint on March 4, 2015, and Defendant World Luxury Cars was served on March 24, 2015. (Dkts. 6-8; *see* Compl. ¶ 18.) Defendants did not respond to the Complaint. Plaintiff requested a certificate of default on May 11, 2015. (Dkt. 9.) The Clerk of Court entered default on the same day. (Dkt. 10.)

Plaintiff moved for default judgment on August 27, 2015, on his own behalf only, seeking payment of all unpaid minimum wage, overtime compensation, and spread-of-hours premiums, as well as statutory damages for wage statement violations, liquidated damages, attorneys' fees, and costs. (Memorandum of Law ("Mem.") at 1, Dkt. 15.) The Motion for Default Judgment was

referred to Magistrate Judge Viktor V. Pohorelsky for a Report and Recommendation and thereafter reassigned to the undersigned.  (*See* August 28, 2015 Order.)

## DISCUSSION

### I.  Standard for Default Judgment

In order to grant a default judgment, the Court must first ensure that Plaintiff took all of the required procedural steps in moving for default judgment, including providing proper notice to Defendants of the motion.  Local Civ. R. 55.2(c).  Plaintiff properly served Defendants Nadia and Arik Lev with the Summons and Complaint by delivery to a person of suitable age and discretion at Defendants' place of business, following by mailing to the same address.  *See* Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2).  Plaintiff properly served Defendant World Luxury Cars via the New York Secretary of State.  *See* Fed. R. Civ. P. 4(h)(1)(A); N.Y. Bus. Corp. Law § 306(b)(1).  Certificates of Default were requested and entered, and Plaintiff complied with Local Rule 55.2(c) by mailing the Default Judgment Motion papers to Defendants.  (*See* Dkts. 24-26.)

Although a "default judgment is ordinarily justified where a defendant fails to respond to the complaint," the Court must nevertheless determine whether the allegations establish liability as a matter of law.  *SEC v. Anticevic*, No. 05-CV-6991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov 30, 2009); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Trs. of the Plumbers Local Union No. 1 Welfare Fund. v. Philip Gen. Constr.*, No. 05-CV-1665 (NG)(RML), 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007).  In determining liability, the Court accepts as true the well-pleaded allegations of the Complaint, drawing all reasonable inferences in favor of Plaintiff.  *See Finkel*, 577 F.3d at 84; *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992).

Even though "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. On a motion for default judgment, the plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83-84 (E.D.N.Y. 2012). When a plaintiff claims FLSA and NYLL violations in the context of a default judgment, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Id.*

## II.     Liability

The Court has federal question jurisdiction under the FLSA and supplemental jurisdiction over the related NYLL claims. *See* 28 U.S.C. §§ 1331, 1367. In order to establish liability, Plaintiff must show that his employment relationship with Defendants is covered under these statutes.

*A. Employment Relationship Under the FLSA*

To establish a claim under the FLSA, a plaintiff must prove first that: (1) plaintiff is an "employee" within the meaning of the FLSA; (2) defendant is an "employer" subject to the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See* 29 U.S.C. §§ 203, 213; *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451 (CBA)(CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017). Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The FLSA describes an employer as "any [person or corporation] acting directly or indirectly in the interest of an

4

employer in relation to an employee." 29 U.S.C. § 203(d). It does not define the term "'employer' in the first instance." *Irizarry v. Ctsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013).

Plaintiff alleges that he was employed by Defendants as a maintenance worker and "general errand runner." (Compl. ¶¶ 2, 21-28.) His primary responsibilities involved cleaning vehicles and the auto shop, as well as completing various errands. (*Id.* ¶ 22.) Accepting these well-pleaded allegations as true, as the Court must on a motion for default judgment, the undersigned finds that Plaintiff falls within the FLSA's definition of "employee."

A defendant is an FLSA employer if it meets the criteria for either enterprise or individual coverage. *See Saucedo,* 2016 WL 8376837, at *4. The enterprise coverage test considers whether the employer "has employees engaged in commerce or in the production of goods for commerce, or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). The individual coverage test takes into account the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Saucedo,* 2016 WL 8376837, at *4. "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Plaintiff alleges that Defendants have employees, including Plaintiff himself, who frequently handled automobiles, equipment, and office supplies that move in interstate commerce, and that Defendants' qualifying annual business exceeds $500,000. (Compl. ¶ 12.) These allegations are sufficient to establish World Luxury Cars' employer status under both tests for the purposes of this default judgment motion. *See Fermin*, 93 F. Supp. 3d at 33.

An employer who "exercises operational control over the employee in question" may be liable under the FLSA. *See Irizarry,* 722 F.3d at 110. Courts in the Second Circuit assess operational control by applying the "economic reality" test, which determines "whether workers are employees and [ ] whether managers or owners are employers." *Irizarry*, 722 F.3d at 104. The economic reality test looks at "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (explaining that no single *Carter* factor alone is dispositive, as the test encompasses the totality of the circumstances). The "ultimate question" is whether "the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Saucedo*, 2016 WL 8376837, at *5 (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2006)) (internal quotes omitted).

Plaintiff's well-pleaded allegations establish that Defendants Nadia and Arik Lev were his employers. They owned Boss Auto and were jointly responsible for making its business decisions. (Compl. ¶¶ 10-12.) Both Individual Defendants set the amount and method of employee compensation. (*Id.* ¶¶ 19-20.) Nadia Lev maintained employment records and provided input into hiring and firing decisions, while Arik Lev determined the hours that employees were required to work and exercised hiring and firing authority. (*Id.*) Plaintiff completed various errands under the Individual Defendants' instructions. (*Id.* ¶¶ 24-27.) The totality of the circumstances supports the conclusion that the Individual Defendants were employers under the FLSA.

Finally, Plaintiff must show that he is not exempt from the FLSA's protections, an analysis that requires more than a recitation of the statutory elements in the Complaint. *Fermin*, 93 F. Supp. 3d at 32 (citations omitted). An employee's "exempt status depends less on his title, and more on

6

the actual duties performed." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010). While the FLSA exempts mechanics "primarily engaged in selling or servicing automobiles," Plaintiff was not a mechanic; he cleaned automobiles rather than selling or servicing them. 29 U.S.C. § 213(b)(10)(A). Plaintiff does not fall within an exempted category such as "executive employee," "creative professional" or "learned professional." *Fermin*, 93 F. Supp. 3d at 32 (citation omitted). He was also not a "*bona fide* 'professional' . . . whose primary duties require advanced knowledge in a field of science or learning." *Fermin*, 93 F. Supp. 3d at 32 (citation omitted); *see* 29 U.S.C. § 213(a)(1). Therefore, Plaintiff is a non-exempt employee under the FLSA.

Plaintiff has shown that the FLSA applies here.

*B. Employment Relationship Under the NYLL*

Plaintiff must show that his employment relationship with Defendants falls within the NYLL, which governs "any person employed for hire by an employer in any employment." N.Y. Lab. Law § 190. The NYLL broadly defines an employee as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. Law § 651(5). As discussed above, Plaintiff's allegations establish that he was an employee.

An employer is any individual or corporation "acting as employer." N.Y. Lab. Law § 651(6). Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations. *See Saucedo*, 2016 WL 8376837, at *6. The FLSA's definition of "employer" is "nearly identical" to that of the NYLL, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *R&R adopted*, 2016 WL 6601445

7

(E.D.N.Y. Nov. 7, 2016). Since Defendants are employers under the FLSA, they are also employers under the NYLL.

Plaintiff has shown that the NYLL applies.

*C. Statute of Limitations*

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015). Plaintiff filed his Complaint on January 16, 2015. The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ)(RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Because Plaintiff was specifically named in the Complaint, he may recover for FLSA violations that occurred on or after January 16, 2012.

Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law §§ 198(3), 663(3). Plaintiff may recover for NYLL violations that occurred on or after January 16, 2009.

*D. Plaintiff's Claims and Damages*

Plaintiff seeks compensation for unpaid minimum wage, overtime compensation, and spread-of-hours premiums. Since the Individual Defendants are owners of Boss Auto, Defendants would be jointly and severally liable for any violations under the FLSA and NYLL. *See Mahoney*, 2016 WL 6585810, at *9.

8

1. <u>Minimum Wage Violations</u>

Plaintiff alleges that he was not properly compensated at the minimum hourly rate required under the NYLL for the period from December 31, 2013 to April 30, 2014. (Mem. at 7.) He does not seek damages for minimum wage violations under the FLSA. (*Id.* at 1, n.2.)

An employer who fails to meet its minimum wage obligation is liable to affected employees under the NYLL. *See* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.1. The burden is on the plaintiff to show that he "was not properly compensated for the work performed," but "it is the employer's responsibility to maintain accurate records of an employee's hours." *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)); *see* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.6. When such records do not exist, a plaintiff can meet his burden "through [his] own recollection." *Padilla*, 643 F. Supp. 2d at 307 (citation omitted).

The NYLL presumes that a weekly salary "covers only the first forty hours [worked per week], unless the parties intend and understand the weekly salary to include overtime hours at the premium rate." *Ramos v. Telgian Corp.*, 176 F. Supp. 3d 181, 193 (E.D.N.Y. 2016) (citation omitted). Plaintiff affirms that his weekly salary "was meant to cover only [the] first forty hours worked per week." (Logan Decl. ¶ 14, Dkt. 18.)

Plaintiff was paid $300 for the first 40 hours worked each week from December 31, 2013 until April 30, 2014, for an hourly rate of $7.50.[1] (Logan Decl. ¶ 14; Compl. ¶ 31.) Under the NYLL, the applicable minimum wage during this period was $8.00 per hour. N.Y. Lab. Law § 652. Plaintiff was underpaid by $0.50 per hour, 40 hours each week, over the course of 17 weeks. Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$340.00 in unpaid minimum wages under the NYLL**.

---

[1] Plaintiff does not allege minimum wage violations from May 2014 onward. During that period, Defendants paid him $400 per week, an hourly rate of $10 an hour, above the NYLL minimum wage. (Logan Decl. ¶ 14.)

2. Overtime Compensation

Plaintiff seeks unpaid overtime compensation under the FLSA and NYLL. (Mem. at 5.) An employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *see* 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL). In the Second Circuit, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," *Lundy v. Catholic Heath Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), providing "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he "worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201; *see also Fermin*, 93 F. Supp. 3d at 44-45 (allegations that plaintiff worked over forty hours a week established an overtime claim). Plaintiff alleges that from September 2009 to September 2014, he worked every Sunday through Friday from 9:00 a.m. to 9:00 p.m., without any breaks, for a total of 72 hours. (Compl. ¶¶ 2, 30; Logan Decl. ¶¶ 13-15.) As discussed above, his weekly salary covered only the first forty hours of work per week. Defendants are therefore liable to Plaintiff for 32 hours of unpaid overtime per week.

Overtime compensation is calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2. Plaintiff can recover under the NYLL from September 1, 2009 to January 15, 2012, and under either statute from January 16, 2012 onward. The relevant wage rates during Plaintiff's employment are as follows:

|  | September 1, 2009-December 31, 2013 | January 1, 2014-April 30, 2014 | May 1, 2014-September 30, 2014 |
|---|---|---|---|
| Plaintiff's Actual Hourly Pay[2] | $7.50 | $7.50 | $10.00 |
| Applicable NYLL Minimum Hourly Wage[3] | $7.15 | $8.00 | $8.00 |
| Applicable FLSA Minimum Hourly Wage[4] | $7.25 | $7.25 | $7.25 |

The higher wage rate from September 1, 2009 to December 31, 2013 was Plaintiff's regular rate of $7.50 per hour. The higher rate from January 1, 2014 to April 30, 2014 was the NYLL minimum wage of $8.00 per hour. The higher rate from May 1, 2014 to September 30, 2014 was Plaintiff's regular rate of $10.00 per hour. Plaintiff is entitled to one and one-half times these rates for 32 hours per week, as follows: $11.25 per hour from September 1, 2009 to December 31, 2013; $12.00 per hour from January 1, 2014 to April 30, 2014; and $15.00 per hour from May 1, 2014 to September 30, 2014.

From September 1, 2009 to December 31, 2013, Plaintiff was employed by Defendants for 226 weeks, and was entitled to $11.25 per hour for 32 hours per week, for a total of $81,360.00. From January 1, 2014 to April 30, 2014, Plaintiff was employed by Defendants for 17 weeks, and was entitled to $12.00 per hour for 32 hours per week, for a total of $6,528.00. From May 1, 2014 to September 30, 2014, Plaintiff was employed by Defendants for 22 weeks, and was entitled to $15.00 per hour for 32 hours per week, for a total of $10,560.00. Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$98,448.00 in unpaid overtime compensation**.

---

[2] (Logan Decl. ¶ 14.)
[3] *See* N.Y. Lab. Law § 652(1).
[4] *See* 29 U.S.C. § 206(1).

### 3. Spread-of-Hours Violations

Plaintiff alleges that Defendants failed to pay him spread-of-hours premiums. (Compl. ¶ 86.) He seeks spread-of-hours pay for December 31, 2013 to April 30, 2014, the period during which he received less than the minimum wage.[5] (Mem. at 8.)

Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours. N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4. As discussed above, Defendants failed to pay Plaintiff spread-of-hours pay from December 31, 2013 to April 30, 2014, although he worked 12 hours each day, 6 days a week. (Compl. ¶¶ 30, 37.) Therefore, Defendants are liable to Plaintiff for violating the spread-of-hours requirement.

The spread-of-hours premium is determined by multiplying the minimum wage for the relevant period by the total amount of days that the employee worked more than ten hours. Employees are to be compensated at the applicable minimum wage regardless of their regular rate of pay. N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4. From December 31, 2013 to April 30, 2014, a period of 17 weeks, Plaintiff was entitled to spread-of-hours pay for 6 days per week at the applicable NYLL minimum wage of $8.00 per hour. Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$816.00 for unpaid spread-of-hours premium**.

---

[5] Several district courts in this Circuit have deferred to a New York State Department of Labor private party opinion letter limiting spread-of-hours eligibility to employees earning the minimum wage or less. *See Guadalupe v. Tri-State Emp't, Mgmt. & Consulting, Inc.*, No. 10-CV-3840 (NG)(CLP), 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013) (collecting cases); *but see Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339-40 (S.D.N.Y. 2005) (declining to defer to opinion letter as a matter of legal interpretation and awarding spread-of-hours pay where plaintiff earned above the minimum wage). Since Plaintiff seeks spread-of-hours premiums only for the period in which Defendants paid less than the minimum wage, the Court need not decide this question.

4. <u>Wage Statement Violations</u>

Plaintiff alleges that Defendants failed to provide wage statements pursuant to Section 195(3) of the NYLL. (Compl. ¶ 76.) Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. According to Plaintiff, Defendants paid him in cash and never provided wage statements. (*Id.* ¶¶ 31-32, 35-36.)

Prior to February 27, 2015, violations of Section 195(3) carried damages of $100.00 per work week, for a maximum of $2,500.00. N.Y. Lab. Law § 198(1-d). Plaintiff concedes that the subsequent increase in statutory damages does not apply retroactively. (Mem. at 9, n.4.) Since Defendants violated the wage statement requirement for over 25 work weeks, Plaintiff is entitled to damages equal to the statutory maximum.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$2,500.00 for Defendants' violation of Section 195(3) of the NYLL**.[6]

5. <u>Liquidated Damages</u>

Plaintiff seeks liquidated damages. (Mem. at 14-19.) Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime compensation. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages. 29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a). Since Defendants failed to respond to the Motion, no good faith exists and liquidated

---

[6] In the Complaint, Plaintiff also alleged violations of the wage notice requirement under Section 195(1) of the NYLL, but does not seek damages here. (*See* Compl. ¶¶ 78-83; Mem. at 1, n. 3.)

damages are appropriate. *See Herrera*, 2015 WL 1529653, at *12 (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA. *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM)(PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (following *Chowdhury*); *Pineda v. Frisolink, Inc.*, No. 15-CV-3774 (GBD), 2017 WL 3835882, at *12 (S.D.N.Y. Aug. 29, 2017) (same). In light of the principle that "the law providing the greatest recovery will govern," Plaintiff may be awarded liquidated damages pursuant to the NYLL. *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citing *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *R&R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)). The NYLL provides the greater recovery for Plaintiff because it allows Plaintiff to recover liquidated damages for all claims brought thereunder, including the spread-of-hours premium owed. Following *Chowdhury* and subsequent decisions of courts in this Circuit, the undersigned respectfully recommends that Plaintiff be awarded liquidated damages on his NYLL claims.

Before the NYLL was amended on April 9, 2011, Plaintiff was entitled to "an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due." N.Y. Lab. Law § 198(1-a) (as effective before April 9, 2011). After the amendment, Plaintiff could recover "one hundred percent of the total amount of wages found to be due." N.Y. Lab. Law § 198(1-a). For the period from September 1, 2009 to April 8, 2011, Plaintiff is entitled to damages on only the overtime claim. He is entitled to 25% of his damages for that period—comprising 32 hours of overtime per week, at $11.25 per hour, for 83 weeks—in the amount of $7,470.00. For the period from April 9, 2011 to September 30, 2014, Plaintiff is entitled to 100% of his damages for

14

minimum wage, overtime, and spread-of-hours violations. His minimum wage damages of $340.00 combined with remaining overtime damages of $68,568.00 and spread-of-hours premium of $816.00 total $69,724.00. The undersigned respectfully recommends that Plaintiff be awarded **$77,194.00 in liquidated damages**.

6. Pre-Judgment Interest

Plaintiff seeks prejudgment interest on all actual damages under the NYLL. (Mem. at 21, n.9.) Since "liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Saucedo*, 2016 WL 8376837, at *16 (citation omitted). The statutory interest rate for prejudgment interest is nine percent per annum. N.Y. C.P.L.R. § 5004. Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as the midway point between when the Plaintiff began and ended work. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

Plaintiff is entitled to recover prejudgment interest on the $99,604.00 in actual damages awarded on his claims for unpaid minimum wage, overtime compensation, and spread-of-hours premium. The midpoint between September 1, 2009 and September 30, 2014 is March 16, 2012. Prejudgment interest on actual damages of $99,604.00, for minimum wage, overtime and spread-of-hours violations, at a rate of 9% per annum, is $24.56 per day, for a total of $49,586.64 from March 16, 2012 to the date of this Report and Recommendation. Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **prejudgment interest of $49,586.64, plus $24.56 per day to the date of judgment.**

7. Post-Judgment Interest

Plaintiff seeks post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g.*, *Fermin*, 93 F. Supp. 3d at 53. Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **post-judgment**

15

**interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.**

        8.  <u>Non-Payment Interest</u>

Pursuant to NYLL § 663(4), a plaintiff "shall have the right to collect attorneys' fees and costs incurred in enforcing any court judgment," and "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law § 663(4). Accordingly, the undersigned respectfully recommends that if the foregoing conditions are met, **Plaintiff's award under the NYLL be increased by 15% and Plaintiff be granted leave to seek attorneys' fees and costs incurred in enforcing the judgment.**

      *E. Attorneys' Fees and Costs*

Plaintiff seeks reasonable attorneys' fees, which he is entitled to recover under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). District courts have broad discretion to determine the amount awarded, and the party requesting fees must provide documentation to support its claims. *Mahoney*, 2016 WL 6585810, at *18. Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. *Saucedo*, 2016 WL 8376837, at *16-17. This "lodestar method" may be adjusted based on the circumstances of the case. *Id.*

A reasonable hourly rate is the rate a "reasonable, paying client would be willing to pay." *Saucedo*, 2016 WL 8376837, at *16-17. The Second Circuit and various district courts have identified case-specific variables relevant in setting a reasonable hourly rate, considering whether the rates requested are proportional to fees awarded to other attorneys performing similar services with comparable skill, expertise and reputation. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of*

16

*Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19. In recent years, decisions in this District have determined reasonable hourly rates in FLSA cases at "approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff." *Id.* (quoting *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, 12-CV-5737 (ILG)(JMA), 2014 U.S. Dist. LEXIS 141455, at *18 (E.D.N.Y. Sep. 15, 2014)).

Plaintiff submitted contemporaneous attorney timesheets, a summary of counsel's qualifications, and attorney affidavits from other cases reflecting hourly rates comparable to those requested here. (*See* Borrelli Decl., Dkt. 17.) Plaintiff requests hourly rates of $350 for Michael Borrelli, $275 for Alexander Coleman, $175 for Jeffrey Maguire, and $75 for paralegals Angelica Moreno and Kevin Guaranda. (*Id.* ¶¶ 39, 52, 55, 58.) Borrelli is a founding and managing partner of Borrelli & Associates, P.L.L.C., with over thirteen years of experience in labor and employment law. (*Id.* ¶¶ 24, 30.) Coleman is a senior counsel who manages his own caseload and "directly supervises all of the legal work of all the Firm's associates." (*Id.* ¶¶ 40, 50) (emphasis omitted.) Maguire is an associate who graduated law school in 2008. (*Id.* ¶ 53.) The undersigned finds the requested rates reasonable.

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Counsel billed a total of 63.5 hours, and Plaintiff's time records show a reasonable amount of time expended on each task. (*See* Ex. C, Dkt. 17 at 21-34.) Counsel did not bill for administrative tasks or engage in "block billing," and the respective time entries do not overlap or otherwise suggest redundancy.

Plaintiff is also entitled to recover reasonable costs under the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ)(JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310

(E.D.N.Y. Apr. 5, 2016).  Plaintiff documented the requested costs of $638.49, including the filing fee in this District, service of process fees, and Westlaw charges.  (*See* Exs. A-B, Dkt. 17 at 11-20.)  Electronic research costs are "compensable as attorneys' fees and may be awarded . . . where the charges are not already accounted for in the attorneys' hourly rates."  *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 212 (E.D.N.Y. 2007) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 369 F.3d at 87-98).  Here, such costs "are sought separately from the [attorneys'] fees," and "the Court may assume that they are not included in the hourly rate."  *Dominguez v. B S Supermarket, Inc.,* No. 13-CV-7247 (RRM)(CLP), 2015 WL 1439880, at *18 (E.D.N.Y. Mar. 27, 2015), *vacated on other grounds,* 2017 WL 52582 (E.D.N.Y. Jan. 4, 2017); *see also Collado v. Donnycarney Rest. L.L.C.*, No. 14-CV-3899 (GBD)(HBP), 2015 WL 4737917, at *14 (S.D.N.Y. Aug. 10, 2015) (awarding cost of Westlaw research).  The Court finds these costs reasonable.

        Plaintiff is entitled to **$11,315.00 in attorneys' fees and $638.49 in costs**.

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that Plaintiff be awarded damages in the total sum of **$240,838.13** plus post-judgment interest, comprised of:

(i)      **$340.00** in unpaid minimum wages;

(ii)      **$98,448.00** in unpaid overtime compensation;

(iii)      **$816.00** in unpaid spread-of-hours premium;

(iv)      **$2,500.00** in statutory damages for the NYLL wage statement claim;

(v)      **$77,194.00** in liquidated damages under the NYLL;

(vi)      **$49,586.64** in pre-judgment interest, plus $24.56 per day to the date of judgment;

(vii)      **$11,315.00** in attorneys' fees;

(viii)      **$638.49** in costs;

(ix)      **Post-judgment interest** as provided in 28 U.S.C. § 1961, to run from the date of judgment until the judgment is satisfied; and

(x)      **Non-payment interest** of 15 percent, if the conditions of NYLL § 663(4) are met.

Plaintiff is directed to serve this Report and Recommendation on Defendants and file proof of service on the docket by **October 2, 2017**. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

                           **SO ORDERED:**

                           *Peggy Kuo*

                           PEGGY KUO

Dated:    Brooklyn, New York            United States Magistrate Judge
          September 25, 2017