UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
LANCE LOGAN, on behalf of himself and all :
others similarly situated, :
 :
                            Plaintiff, :
 :      **REPORT &**
 :      **RECOMMENDATION**
                    -against- :
 :      1:15-CV-00248 (ENV)(PK)
 :
WORLD LUXURY CARS, INC. d/b/a Boss :
Auto Premier, NADIA LEV and ARIK LEV, each :
in their individual and professional capacities, :
 :
                       Defendants.
-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

On June 8, 2018, default judgment was entered in favor of Lance Logan ("Plaintiff") against World Luxury Cars, Inc. d/b/a Boss Auto Premier ("World Luxury Cars" or the "Corporate Defendant"), Nadia Lev, and Arik Lev (together, the "Individual Defendants" and collectively with World Luxury Cars, the "Defendants"). (Order dated June 8, 2018, Dkt. 31.) Defendants have filed a Motion to Vacate Default Judgment. ("Motion," Dkt. 35.) The Honorable Eric N. Vitaliano referred the Motion to the undersigned for a Report and Recommendation. (Order dated July 27, 2021.) For the reasons set forth below, the undersigned respectfully recommends that the Motion be denied.

                                      **BACKGROUND**

On January 16, 2015, Plaintiff filed this action[1] against Defendants, a used car dealership and its owners, alleging that they violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a), 206(a), New York Labor Law ("NYLL") §§ 160, 652(1), 190, 191, 663(1), 195(3), 195(1), and New

---

[1] Although the case was brought as a putative class and collective action, Plaintiff only sought and was granted default judgment on his own behalf. (Dkt. 28 at 2.)

1

York Comp. Codes. R. & Regs. ("NYCCRR") tit. 12, § 142 *et seq.* by failing to pay minimum, overtime, and spread of hours wages, and to provide proper wage notices and statements while he worked for them as a maintenance worker and general errand runner from September 2009 to September 2014. ("Compl." ¶¶ 1-2, Dkt. 1.)

Plaintiff alleged that the Corporate Defendant is a used car dealership incorporated in the State of New York as World Luxury Cars, Inc., which does business as Boss Auto Premier, and which operates and maintains a principal place of business at 160-14 Hillside Avenue, Jamaica, New York 11432 (the "Jamaica Address"). (*Id.* ¶ 9.)

Plaintiff alleged that Nadia Lev and Arik Lev "are spouses who own multiple car dealerships." (*Id.* ¶ 18.) He alleged that Nadia Lev was "an owner and the Chief Executive Officer of Boss Auto," who was jointly responsible for making business decisions, maintaining employee records and "overseeing and implementing the method of compensating employees." (*Id.* ¶¶ 10, 19.) Plaintiff alleged that Arik Lev was an owner and supervisor who made business and managerial decisions, set employees' hours, rates, and methods of pay, and hired and fired employees, including firing Plaintiff in September 2014. (*Id.* ¶¶ 11, 20, 21.)

Plaintiff alleged that although his primary responsibilities were "cleaning the vehicles, cleaning the auto shop and performing maintenance and repair duties on the building," he was also required to perform work at other locations. (*Id.* ¶¶ 22-27.) For example, he alleged that Arik Lev required him "to paint the auto shop at Defendant Arik[ Lev's] Flatbush, Brooklyn location." (*Id.* ¶ 23.) In July 2012, 2013, and 2014, Defendants Arik Lev and Nadia Lev "required Plaintiff to clean their pool, and in the month of December of those same years, they required Plaintiff to clean the snow that accumulated around their pool," and for three weeks in November 2012 after Hurricane Sandy, they required him "to clean out their flooded basement and install sheet rock." (*Id.* ¶¶ 26-27.)

On March 4, 2015, Plaintiff served Nadia Lev and Arik Lev with a copy of the summons and complaint by delivering them to a person of suitable age and discretion (who refused to give his name) at Defendants' place of business at the Jamaica Address, and subsequently mailing a copy to the same address. (Dkts. 6, 7.) On March 24, 2015, Plaintiff served World Luxury Cars by delivering a copy of the summons and complaint to the New York Secretary of State. (Dkt. 8.)

After Defendants failed to appear, Plaintiff moved for default judgment on August 27, 2015. ("Default Judgment Motion," Dkt. 14.) Copies of the Default Judgment Motion and the Court's Scheduling Order setting deadlines for responses to that motion were sent to Defendants at the Jamaica Address. (Dkts. 22, 23, 24, 25, 26.) Defendants did not file a response to the Default Judgment Motion.

On September 25, 2017, the undersigned issued a Report and Recommendation, recommending that default judgment be granted. (the "Default Judgment R&R," Dkt. 28.) The parties were reminded that, pursuant to Federal Rule of Civil Procedure 72(b), any objection to the Default Judgment R&R must be filed within 14 days of service, and Plaintiff was directed to serve copies of the Default Judgment R&R on Defendants. (*Id.* at 19.) Plaintiff mailed the Default Judgment R&R to Defendants at the Jamaica Address. (Dkt. 29.) No party filed any objection.

On June 1, 2018, the Honorable Roslynn R. Mauskopf adopted the undersigned's Default Judgment R&R and granted the Default Judgment Motion. (Order, Dkt. 30.) On June 8, 2018, judgment was entered in favor of Plaintiff against Defendants, "jointly and severally, in the amount of $240,838.13 plus post-judgment interest." (Judgment, Dkt. 31 at 1.) In compliance with the Court's directive to mail a copy of the Order and Judgment to Defendants (Order at 2-3), Plaintiff confirmed that he did so on June 18, 2018. (Dkt. 32.)

Three years went by.

On July 19, 2021, Defendants filed the Motion, seeking to vacate the default judgment. (Dkt. 35.) Plaintiff filed his opposition on December 8, 2021. ("Pl. Opp.," Dkt. 43.) Defendants filed their reply on December 14, 2021. ("Def. Reply," Dkt. 45.)

## DISCUSSION

### I.  Standard for Vacating a Default Judgment

Defendants argue that the default judgment should be vacated under Fed. R. Civ. P. 55(c) and 60(b)(4) on the basis that it is void for lack of personal jurisdiction due to defective and improper service. (Affirmation & Memorandum of Law in Support of Motion to Vacate Default Judgment, "Mem. in Support," ¶ 2, Dkt. 37.)

Under Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under rule 60(b)."

Under Fed. R. Civ. P. 60(b)(4), "the court may relieve a party or its legal representative from a final judgment" on the basis that "the judgment is void." If a defendant is not properly served with the complaint, the court lacks personal jurisdiction, and any resulting judgment would be void. *See Licci ex rel. Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 59 (2d Cir. 2012) (the court only has personal jurisdiction over a defendant if the plaintiff's service of process upon the defendant was procedurally proper). In such a case, the default judgment must be vacated. *See Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001(MKB)(RML), 2020 WL 7249249, at *1 (E.D.N.Y. July 2, 2020), *R&R adopted*, 2020 WL 6390162 (E.D.N.Y. Nov. 2, 2020), appeal dismissed (Mar. 17, 2021).

"When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by three principal factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir.

2004) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)) (internal quotation marks omitted). "A motion to vacate a default judgment is 'addressed to the sound discretion of the district court.'" *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005) (citations omitted). However, the Second Circuit has "expressed a strong 'preference for resolving disputes on the merits.'" *Id.* (quotation omitted).

### A. Whether the Default Judgment Should Be Vacated as Void Under Rule 60(b)(4)

Defendants contend that they "never received the alleged service or mailing" because the summons and complaint were delivered and mailed to the wrong address. (Mem. in Support ¶¶ 8, 15.) They allege that they only learned of this matter on June 8, 2021 when Defendants' attorney "first received notice of a Client Alert from Docket Alarm that there was a case pending in the Supreme Court of the State of New York, Queens County, in which Plaintiff is seeking information related to this matter … in conjunction with a letter that [Arik] Lev received from his bank that there was an issue on one of his accounts." (*Id.* ¶ 7.)

Defendants also argue that Plaintiff did not follow the requirements for service on the Corporate Defendant under Rule 4(h)(1)(B) and that service was improper because it was on the wrong entity. (*See id.* ¶¶ 14-16, 20-23, 28-29.)

#### 1. Legal Requirements for Service of Process

Rule 4 of the Federal Rules of Civil Procedure governs service of process in a federal action. Service on an individual may be effectuated, *inter alia*, "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under New York law, it is proper to serve an individual by "delivering the summons within the state to a person of suitable age and discretion at the [individual's] actual place of business … and by either mailing the summons to the person to be served at his or her last known residence … or []actual place of business …." N.Y. C.P.L.R. § 308(2).

5

Rule 4(h)(1) governs service of a summons and complaint on a corporation within the United States. Under subsection (A), the corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Under subsection (B), it may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and— if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

Because Rule 4(e)(1) permits service under applicable state law, a corporation may be served under New York law. Section 306 of the New York Business Corporation Law provides that service on a corporation is proper when the summons and complaint are served on the New York Secretary of State as an agent of the corporation. N.Y. Bus. Corp. Law § 306(b)(1) ("Service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made by personally delivering to and leaving with … any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process ….") Section 306 further states, "Service of process on such corporation shall be complete when the secretary of state is so served." *Id.* It is then incumbent on the Secretary of State to "promptly send one of such copies by certified mail, return receipt requested, to such corporation, at the post office address, on file in the department of state, specified for the purpose." *Id.*

Service on corporations through the Secretary of State is permitted because "[i]n New York, the business corporation law requires that corporations . . . register with the Secretary of State and authorize the Secretary of State to accept legal process to guarantee that those aggrieved by their acts or omissions can have access to justice." *Trustees of Local 531 Pension Fund v. Am. Indus. Gases, Inc.*, 708 F. Supp. 2d 272, 276 (E.D.N.Y. 2010) (citing BCL § 304(a)-(b)). The use of such state procedures by a corporation "is in fact a form of constructive consent to personal jurisdiction which has been found

6

to satisfy due process." *Id.* (quoting *Chong v. Healthtronics, Inc.*, 06–CV–1287, 2007 WL 1836831, at *10, 2007 U.S. Dist. LEXIS 45956, at *30 (E.D.N.Y. June 20, 2007). "When the Secretary of State is so served, service on a corporation is complete regardless of whether the corporation receives the Summons and Complaint from the Secretary of State." *Miller v. Collectron Corp.*, No. 98-CV-2221 (JG), 1999 WL 730981, at *7 (E.D.N.Y. Sept. 16, 1999); *see also Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 255 (2d Cir. 1995) (the method of service provided in Section 306 is "reasonably calculated" to notify a corporate defendant of the institution of suit; therefore, "successful achievement [by timely receiving notice] is not necessary to satisfy due process requirements").

### 2. Service on the Corporate Defendant

Plaintiff served the Corporate Defendant by delivery of the summons and complaint to the Secretary of State. (Dkt. 8.)

Defendants do not dispute that the summons and complaint were delivered to the Secretary of State. (Def. Reply at 6.) They argue instead that they did not receive the documents, and "[t]here was no acknowledgment ever provided by the Defendant, and no follow up by Plaintiff['s] Counsel with Defendant to confirm receipt—nor was there any response by the Defendant at all." (Mem. in Support ¶ 15.) Defendants also argue that Plaintiff failed to follow the requirements for service under Rule 4(h)(1)(B). (*See id.* ¶¶ 20-23.)

The law is clear that delivery of the summons and complaint to the Secretary of State is sufficient to constitute service on the Corporate Defendant. *Criollo v. NY Fine Interiors Inc.*, No. 19-CV05974 (EK)(CLP), 2021 WL 1200318, at *6 (E.D.N.Y. Mar. 3, 2021), *R&R adopted*, No. 19-CV-5794(EK)(CLP), 2021 WL 1193082 (E.D.N.Y. Mar. 30, 2021) (Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1) "allow[] for service according to state law in which the federal district court is located or where service is made," and "New York designates the Secretary of State as agent for service of process for all corporations") (quoting *Baker*, 72 F.3d at 254 (internal quotation marks omitted)). Because service is

7

complete once service on a corporation is effectuated through the Secretary of State under N.Y. Bus. Corp. Law § 306(b)(1), a plaintiff has no further obligation to contact defendants in order to complete service. Moreover, failure to actually receive the summons and complaint from the Secretary of State does not make service improper. *See Miller*, 1999 WL 730981, at *7.

Defendants claim that service was made on the incorrect address for World Luxury Cars. (Mem. in Support ¶ 8 ("Notably, the address in which the Plaintiff allegedly served the Defendant with the Summons and Complaint was not the correct address").) They contend that the Jamaica Address was incorrect because World Luxury Cars "is located at 8912 Church Avenue, Brooklyn, New York 11236" (the "Brooklyn Address"), and "has a principal place of business" there. (*Id.* ¶¶ 8, 16.) In support of their contention, Defendants submitted Entity Information from the New York Department of State Division of Corporations, dated July 13, 2021, indicating a service of process address for World Luxury Cars, Inc. at the Brooklyn Address. ("World Luxury Car Entity Info.," Ex. F to Mem. in Support at 1, Dkt. 37-6.) That same page states, "Entity Status: Active," and names Nadia Lev as the Chief Executive Officer ("CEO") of World Luxury Cars at the Brooklyn Address. (*Id.*) Defendants argue that "Plaintiff in this matter failed to notify the Secretary of State of the proper address, thus the Secretary of State must have sent [the Complaint] to the incorrect location because Defendants were never notified in this matter." (Def. Reply at 6.)

Defendants' argument fails for several reasons. First, it is Corporate Defendant's, not Plaintiff's, obligation to maintain a correct address with the Secretary of State. *See* BCL § 304(d). More importantly, Defendants acknowledge that the Secretary of State had the <u>correct</u> address, since the address where they assert that World Luxury Cars is located and has a principal place of business— *i.e.*, the Brooklyn Address—is the same as that listed with the Department of State. (Mem. in Support ¶¶ 8, 16; World Luxury Car Entity Info. at 1.) Thus, even though the summons issued by the Clerk

of Court for the Corporate Defendant listed the Jamaica Address as the address for World Luxury Cars, the Secretary of State would have sent the summons and complaint to the Brooklyn Address.

Furthermore, although Defendants argue that World Luxury Cars "is no longer in operation" and "has effectively been closed" as of 2013, it was still listed with the Department of State as an active corporation as recently as 2021. (World Luxury Car Entity Info. at 1; Mem. in Support ¶ 10.) Thus, the Secretary of State had the <u>correct</u> address for an existing corporation, and there is no question that the summons and complaint was sent to and properly served on the Corporate Defendant.[2]

Defendants' argument that Plaintiff failed to follow the requirements for service under Rule 4(h)(1)(B) is similarly meritless. Plaintiff was permitted by Rule 4(h)(1)(A) to utilize state law to effectuate service on World Luxury Cars. Even under Rule 4(h)(1)(B), which requires delivery to an "agent authorized by appointment or by law to receive service of process," the Secretary of State is considered an "agent of a domestic … corporation" under N.Y. Bus. Corp. Law § 306(b)(1). Thus, delivering the summons and complaint to the Secretary of State satisfies both subsections of Rule 4(h)(1). *See Criollo*, 2021 WL 1200318, at *6.

Finally, Defendants' contention that the wrong entity was served because World Luxury Cars did not employ Plaintiff (Affidavit of Arik Lev ("Arik Lev Aff.") ¶ 6, Dkt. 36; Mem. in Support ¶ 10; Def. Reply at 3) is a substantive defense and not properly raised as a challenge to whether service of process was effectuated. Accordingly, Plaintiff's service on World Luxury Cars was proper pursuant to Fed. R. Civ. P. 4(h)(1).

---

[2] In addition, because the address with the Secretary of State was correct, there is no issue of Plaintiff "engag[ing] in any 'sharp practice' by serving process on an address it knew was obsolete." *Trustees of Local 531 Pension Fund*, 708 F. Supp. 2d at 275.

3. Service on the Individual Defendants

Plaintiff served Nadia Lev and Arik Lev by delivering copies of the summons and complaint to "a person of suitable age and discretion" at their "actual place of business/employment" at the Jamaica Address, followed by mailing copies to that address. (Dkts. 6, 7.) This mode of service on individual defendants is proper under New York and federal law. *See* N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e)(1).

Arik Lev asserts that he did not receive the summons and complaint. (Mem. in Support ¶¶ 7, 18; Arik Lev Aff. ¶¶ 9, 11.) He also contends that while he and his wife Nadia Lev formed World Luxury Cars together in 2004 and she worked alongside him as the CEO, "[w]ithin a few months of opening the company," she "left the company to care for our children" and "resigned." (Arik Lev Aff. ¶ 3.)

Because Defendants argue that World Luxury Cars was not located at the Jamaica Address where the Individual Defendants were served, the undersigned considers whether this was an actual place of business for Arik Lev and Nadia Lev.

"New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a 'clear identification of the work performed by [the defendant] with that place of business.'" *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (quoting *King v. Galluzzo Equip. & Excavating, Inc.*, No. 00 CV 6247, 2001 WL 1402996, at *4 (E.D.N.Y. Nov. 8, 2001)).

Defendants assert that a "wholly separate and unrelated company," Tar Auto Sales, Inc., has been operating at the Jamaica Address using the trade name Boss Auto Premier. (Mem. in Support ¶ 9.) They submitted Department of State Entity Information for Tar Auto Sales, Inc., which gives the Jamaica Address as the service of process address and indicates that the corporation was "dissolved by proclamation" with an inactive date of June 29, 2016. ("Tar Auto Sales Entity Info," Ex. G to

10

Mem. in Support at 1, Dkt. 37-7.)  Defendants contend that the owner of Tar Auto Sales, Inc. is someone named Shawn Adams.  (Mem. in Support ¶ 9.)  Arik Lev contends that his "only involvement with Boss Auto Premier was prior to 2013," and his "only association with Mr. Adams was as an associate, and if [Arik] Lev did not have what that customer needed, he would refer them to Tar Auto Sales, Inc., d/b/a Boss Auto Premier, [] expecting the same treatment in reverse."  (*Id.*; Arik Lev Aff.)

The Individual Defendants fail to show that the Jamaica Address was not their actual place of business.  They dispute that the Jamaica Address was the business address for World Luxury Cars, but it was not necessary for that entity to operate there for that location to be an actual place of business for Nadia Lev and Arik Lev as individuals.

Plaintiff provided detailed allegations that clearly connect the Jamaica Address to the work of the Individual Defendants.  He named his employer at that location as "Boss Auto Premier," and Defendants do not dispute that a business of that name operated at the Jamaica Address.  (Compl. ¶ 9; Arik Lev Aff. ¶ 6.)  Plaintiff described the work he did at that location as cleaning vehicles and the auto shop, as well as performing maintenance and repairs on the building.  (Compl. ¶ 22.)  Plaintiff identified Nadia Lev as "an owner and the Chief Executive Officer of Boss Auto," who made business and managerial decisions for Boss Auto and maintained employment records for the company's employees.  (*Id.* ¶¶ 10, 19.)  He identified Arik Lev as "an owner of and/or supervisor at Boss Auto," who determined employees' hours and rates of pay and routinely exercised his hiring and firing authority, "including with respect to his decision to hire and terminate Plaintiff."  (*Id.* ¶¶ 11, 20-21.)  Plaintiff also alleged that Arik Lev required him to "paint the auto shop at Defendant Arik[ Lev's] Flatbush, Brooklyn location."  (*Id.* ¶ 23.)

The actual place of business for purposes of service under N.Y. C.P.L.R. § 308(2) does not need to be the defendant's <u>principal</u> place of business.  *Warshun v. New York Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013) ("For the purpose of service of process, a defendant can have

11

more than one 'actual place of business.'") (quoting *Velez*, 203 F. Supp. 2d at 325-26). Thus, even if Arik Lev was primarily associated with World Luxury Cars at the Brooklyn Address, that fact does not rule out the Jamaica Address as another actual place of business for him. He acknowledges that he was "an associate" of the person he claims is the owner of Boss Auto Premier, and referred customers there often enough that they had a mutually beneficial business relationship. (Mem. in Support ¶ 9 ("if Mr. Lev did not have what that customer needed, he would refer them to… Boss Auto Premier, … expecting the same treatment in reverse").)

As further support for the Jamaica Address being an actual place of business for the Individual Defendants, the affidavits of service on them at the Jamaica Address do not state that anyone at that address told the process server that Nadia Lev or Arik Lev did not work there. (Dkts. 6, 7.) There is also no indication that the numerous subsequent mailings—of the summons and complaint, the Default Judgment Motion, the Scheduling Order, the Default Judgment R&R, and the Order and Judgment—to Nadia Lev and Arik Lev at that address were returned as undeliverable or addressee unknown.

Defendants' contention that Nadia Lev "has no relationship to the business" (Arik Lev Aff. ¶ 9) is belied by the uncontroverted evidence that she remains listed as the Corporate Defendant's CEO as recently as 2021. (World Luxury Car Entity Info. at 1.) She also failed to submit her own affidavit regarding her lack of connections to a company of which she was CEO or to show that the Jamaica Address was not an actual place of business for her.

Accordingly, the undersigned finds that Plaintiff's service of the summons and complaint on the Individual Defendants at their actual place of business, followed by mailing to that address, was proper, pursuant to Fed. R. Civ. P. 4(e)(1) and N.Y. Bus. Corp. Law § 308(2).

Because service on all Defendants was proper, Defendants' challenge to personal jurisdiction on this ground fails, and there is no basis on which to vacate the default judgment as void.

### B. Application of the *McNulty* Factors

Defendants also argue that the Default Judgment should be vacated because "[s]trong public policy favors resolving disputes on the merits rather than through default judgments." (Mem. in Support ¶¶ 24-25.) While apparently invoking the Second Circuit's strong preference for cases to be decided on their merits, *Green,* 420 F.3d at 104, Defendants do not make any specific arguments regarding the three factors that the Second Circuit has stated should be applied, *i.e.*, (1) whether the default was willful, (2) whether Defendants demonstrate the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause Plaintiff prejudice. *See McNulty*, 137 F.3d at 738. Nevertheless, the undersigned considers and weighs each of these factors.

Although these are the same factors that should be considered on a motion to set aside an entry of default under Rule 55(c), "courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citation omitted); *see also Manzanares*, 2020 WL 7249249, at *1.

1. Willfulness

Of the three factors for vacating default judgment, "willfulness carries the most weight. Though each factor is to be considered, a 'default should not be set aside when it is found to be willful.'" *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991); *see also Lopez v. Mohammed*, No. 14-CV-4443 (PKC)(MDG), 2017 WL 4277154, at *8 (E.D.N.Y. Sept. 26, 2017). For a finding of willfulness, "it is sufficient to conclude that the defendant defaulted deliberately." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (internal quotation marks omitted). A finding of bad faith is not necessary. *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). Where defendants attempt to explain their default by claiming

13

they were not properly served and did not have notice of the action, their default will be considered willful unless they can support that contention. *See Manzanares*, 2020 WL 7249249, at *2.

When a defendant denies receiving service or notice of a lawsuit, "courts may discredit such denials of service when there is 'ample evidence from which [to] conclude that [the defendant's] statements lacked credibility.'" *De Curtis*, 529 F. App'x. at 86 (quoting *Old Republic Ins. Co. v. Pacific Financial Services of America, Inc.*, 301 F.3d 54, 58 (2d Cir. 2002) (alterations in original)).

Defendants' assertions that they were not aware of this action are not supported. As discussed above, all Defendants were properly served with the summons and complaint. In addition, Defendants were subsequently sent several additional mailings related to this case. The Default Judgment Motion was sent to Defendants by first class mail on August 27, 2015. (Dkts. 24, 25, 26.) The Scheduling Order of September 17, 2015, setting a briefing schedule for responses to the Default Judgment Motion, was sent by certified mail to Defendants on September 17 and 18, 2015. (Dkts. 22, 23.) The Default Judgment R&R was sent by first class mail to Defendants on September 26, 2017. (Dkt. 29.) While all these mailings were to the Jamaica Address, there is no indication that any of them were returned as undeliverable or addressee unknown.

In addition, on June 18, 2018, Plaintiff's counsel confirmed in writing that Defendants were served with a copy of the Order and Judgment. (Dkt. 32.) Plaintiff does not state how service was effectuated or at what address, but there is no indication here either that Defendants could not be reached at that address or were unknown there.

Defendants acknowledge that they had a connection to the Jamaica Address and assert that the owner of Boss Auto Premier at that location was "an associate" of Arik Lev, to whom Mr. Lev referred customers, in a mutually beneficial relationship. (Mem. in Support ¶ 9.) Thus, it is not credible that multiple mailings of legal documents to the address of such a business associate would neither be forwarded to Defendants nor returned to the sender as undeliverable. In further support

14

of Defendants' connection to the Jamaica Address, Plaintiff submitted an Affidavit of Due Diligence, showing that on March 4, 2015, its process server attempted to serve Defendants at the Jamaica Address, but was unable to effect process based on the reason: "REFUSE TO ACCEPT." (Dkt. 44.) Again, there is no indication that Defendants could not be reached at the Jamaica Address or were unknown there.

Arik Lev submitted an affidavit stating that he was "unaware of any attempts to serve [him] with notice of a complaint" and he "had not gotten notice of anything involving this underlying matter." (Arik Lev Aff. ¶¶ 9, 11.) He stated that the "first notice [he] received in this matter was on June 8, 2021, which I received from my attorney" in conjunction with a letter from his bank that there was an issue on one of his accounts. (*Id.* ¶ 9.) He does not, however, rebut the process server's affidavits that service was effectuated at the Jamaica Address, nor does he offer any explanation for why he and his co-defendants did not receive any of the numerous documents sent to them in conjunction with this case. *See Lopez*, 2017 WL 4277154, at *7 ("defendants' claims … that, of the seven mailings, they only received the default judgment—especially without any explanation as to how the other six mailings would not have reached them—strains credulity").

Nadia Lev did not submit an affidavit on behalf of herself or World Luxury Cars.

Based on the totality of the circumstances, an assessment of all the materials presented, and drawing reasonable inferences from them, the undersigned finds that Defendants' conclusory denials of being aware of this action are not credible, and therefore, their default was willful.

2. <u>Meritorious Defense</u>

"In order to make a sufficient showing of a meritorious defense[,] ... the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *Green*, 420 F.3d at 109 (quoting *McNulty*, 137 F.3d at 740). A "defendant must present more than conclusory denials when attempting to show the existence of a

15

meritorious defense." *Id.* at 110; *see also Enron Oil Corp.*, 10 F.3d at 98 ("A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense").

Defendants seem to argue that they were not Plaintiff's employer and, therefore, cannot be liable for any of the claimed violations of the FLSA and NYLL. (Def. Reply at 8 ("Defendants were never the proper party to begin with ….").) However, nowhere in his affidavit does Arik Lev state that <u>he</u> did not employ Plaintiff. Rather, his affidavit focuses on corporate structure, stating, "It is my understanding that Plaintiff, Lance Logan, was employed by a Company named Tar Auto Sales, Inc., who did business as Boss Auto Premier," which "[a]ccording to the public records … had a principal place of operation" at the Jamaica Address. (Arik Lev Aff. ¶ 6.) Further, he states that Boss Auto Premier "is an entity that has no legal relation to my former company, World Luxury Cars, Inc." (*Id.* ¶ 8.) Finally, he states that his "only involvement with Boss Auto Premier was prior to 2013, when World Luxury Cars, Inc. closed." (*Id.* ¶ 7.) Ultimately, Arik Lev does not deny any of the violative conduct that Plaintiff alleges occurred from 2009 through 2014, including that Arik Lev and Nadia Lev required Plaintiff to do work for them at their residence in 2012, 2013, and 2014, such as cleaning their flooded basement and installing sheet rock after Hurricane Sandy in 2012, or that he required Plaintiff to drive people on his behalf and paint his Brooklyn auto shop. (Compl. ¶¶ 23-28.) He also does not deny that he managed, supervised and fired Plaintiff as a maintenance worker.[3] (*Id.* ¶¶ 20-21.)

---

[3] Defendants in their Memorandum of Law in Reply claim that Arik Lev's affidavit states that "his place of operation was not Queens, but rather [at the Brooklyn Address], and that "he never had an employee named Lance Logan." (Def. Reply at 3.) However, the affidavit does not state those facts. The affidavit states that "[a]ccording to the public records,…the address of World Luxury Cars was [the Brooklyn Address]." (Arik Lev Aff. ¶ 5.) It does not deny that Arik Lev did any business at the Jamaica Address, nor does it constitute a defense to Plaintiff's allegations that Arik Lev (apart from World Luxury Cars) supervised and managed Plaintiff at the Brooklyn Address or some other location. Moreover, the affidavit states, "It is my understanding … that [Plaintiff] was employed by Boss Auto Premier, which is an entity that has no legal relation to my former company …." (*Id.* ¶ 8.) It does not state that Arik Lev himself did not employ Plaintiff in some capacity.

16

Defendant Nadia Lev did not submit an affidavit. Although Arik Lev's affidavit states that she "left the company to care for our children" (Arik Lev Aff. ¶ 3), she does not deny engaging in the alleged acts.

As for Defendant World Luxury Cars, its defense that it closed in 2013 is contradicted by its own evidence that it was still listed as an active entity in 2021. Furthermore, an argument that it closed in 2013 does not constitute a complete defense, since Plaintiff's allegations include the period from 2009 to 2013, when World Luxury Cars was indisputably still in business.[4]

Thus, the undersigned finds that Defendants do not present evidence of facts that would constitute a meritorious defense.

3. Prejudice to Plaintiff

"[D]elay standing alone does not establish prejudice." *Enron Oil Corp.*, 10 F.3d at 98. A plaintiff opposing a motion to vacate a default must show "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks omitted)).

Here, Plaintiff last worked for Defendants in September 2014. (Compl. ¶¶ 2, 21.) He filed the Complaint in January 2015 and served Defendants in March 2015. (Dkts. 1, 6, 7, 8.) Defendants first appeared in July 2021, more than six years later. The passage of more than seven years since Plaintiff's last date of employment is likely to lead to the loss of evidence should the judgment be vacated. *See Manzanares,* 2020 WL 7249249, at *6 (passage of three years makes it likely that evidence will be more difficult to locate); *Lopez,* 2017 WL 4277154, at *11 (vacating judgment more than three

---

[4] Even if the Corporate Defendant has a possible meritorious defense that Plaintiff sued "the wrong entity," it does not overcome the willfulness of its default by not appearing in this case until more than six years after the complaint was served on it.

years after plaintiff stopped working for defendants "would result in further delay and the likely loss of evidence.")

Because all the *McNulty* factors weigh against vacating the default judgment, there is no basis for granting the Motion and it should be denied.[5]

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Motion be denied.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to timely file any objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
March 30, 2022

---

[5] Defendants' request that the case should be dismissed pursuant to both Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) "as this was a lawsuit alleged against the wrong parties" (*see* Mem. in Support ¶ 30) should be denied. There is no basis for dismissing the Complaint unless the default judgment is vacated and the case reopened.